```
           IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT BLUEFIELD
```

MICHAEL ROSS,

     Plaintiff,

v.                                CIVIL ACTION No. 1:23-00425

BLUEFIELD AREA TRANSIT and
JOHN REEVES,

     Defendants.


## MEMORANDUM OPINION AND ORDER

By Standing Order, this action was referred to United States Magistrate Judge Omar J. Aboulhosn for submission of findings and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Aboulhosn submitted to the court his Proposed Findings and Recommendations ("PF&R") on July 31, 2023, in which he recommended that the court grant defendants' motion to dismiss, dismiss this case with prejudice, and remove the matter from the docket of the court.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days plus three mailing days in which to file any objections to Magistrate Judge Aboulhosn's Findings and Recommendations.  The failure of any party to file such objections within the time allowed constitutes a waiver of such party's right to a de novo review by this court.  Snyder v.

Ridenour, 889 F.2d 1363 (4th Cir. 1989).  On August 2, 2023, Ross filed his objections.  See ECF No. 52.  That same day, he filed a motion to produce as well as a motion for appointment of counsel.  See ECF Nos. 50 and 51. Ross has gone on to file numerous motions, affidavits, documentation, and copies of documents filed with other entities.  See ECF Nos. 53-56, 58-93, 95-104.

Pursuant to § 636(b)(1), a district court is required to conduct a de novo review of those portions of the magistrate judge's report to which a specific objection has been made.  The court need not conduct de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982); see also Fed. R. Civ. P. 72(b) ("The district court to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.").  The court has considered the entire record in this matter and reviewed de novo Ross' objections.

<u>Background</u>

According to plaintiff's complaint:

> On 3/23/2023, I boarded the Bluefield Area Transit from Mercer Mall leaving Planet Fitness. I was denied a seat by a passenger stating "You can't sit here." I proceeded to find another seat, another passenger denied me the right to sit beside her as well. I am totally blind, upon finding a seat I was assaulted by another passenger being struck in the face as he then proceeded to utter a racial slur. My only reaction was self defense, which is my Second Amendment. The right of the People to keep and bear arms, shall not be infringed. The West Virginia State Police were called out to the scene, I was not charged with a crime. Officer Morris proceeded with an investigation, I was not charged with a crime. I traveled home on the Bluefield Area Transit. The following day, I was denied access to board the Bluefield Area Transit per John Reeves the General Manager of the Bluefield Area Transit. Which violated the US Code 2000a, prohibition against discrimination or segregation in places of accommodation.
>
> As a result of not being able to access public accommodations I have suffered tremendously. . . . I utilized the transit along side of my disability to motivate and be an inspiration to others during my commute. . . .

ECF No. 2-1.

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). <u>See</u> ECF. No. 8. In support of their motion, they offered the affidavit of John Reeves, the General Manager of Bluefield Area Transit ("BAT"). <u>See</u> ECF No. 10. According to Reeves, "[o]n March 22, 2023, [he] was notified of an incident that occurred between two of [BAT's] patrons." <u>Id.</u> Reeves called the driver of the bus, Jenni

Pickens, who relayed what had happened and informed him that the West Virginia State Police responded to the incident.  See id. After the bus returned to the BAT station, Reeves obtained the video footage from cameras on the bus.  According to Reeves, the video showing plaintiff boarding the bus outside Planet Fitness at Mercer Mall.  See id.  According to Reeves, "Ross is a frequent passenger" and he believes that Ross is "legally blind."  Id.  Reeves made the following observations from the video:

> Mr. Ross attempts to sit in the front passenger seat which was occupied by another individual.  Mr. Ross attempts to sit in the passenger's lap, to which the passenger refuses Mr. Ross the opportunity to sit on him.  Mr. Ross then has a verbal exchange with the passenger during which Ross aggressively makes a motion towards the passenger causing him to flinch away. Mr. Ross then attempts to sit in the front driver's side seat, which was also occupied.  The individual in that seat also refuses to allow Ross to sit on her.  Mr. Ross is shown having a verbal altercation with a passenger seated in the back of the bus over finding an available seat.  Ross then sits in the second-row seating on the passenger side of the bus.  Ross continues to argue with the passenger seated immediately behind him touching him numerous times.  On the video, Ross is shown turned in his seat facing towards the individual that he is having the argument with, and that individual proceeds to strike Ross once in the face. As the bus pulls away, Mr. Ross engages in physical combat with the passenger seated behind him with wh[om] he had been arguing.  During the fight, Ross throws his cane which strikes a bystander riding the bus in an adjacent seat.  While the fight is happening, Driver Pickens requests that Ross stop multiple times, which he fails to do. Pickens stops the bus and evacuates all remaining

passengers but for Ross and the individual he is
striking.

Id. Eventually, Ross is transported to his destination on
the BAT. See id.

Upon reviewing the video footage of the incident, Reeves
determined that sanctions were warranted for Ross and the other
individual involved in the fight. See id. He consulted BAT's
Passenger Conduct Policy and Rules for Riding. Reeves decided
to impose a thirty-day suspension for both Ross and the other
individual. See id. Reeves informed Ross of his suspension on
March 24, 2023. See id. Reeves attached copies of the
Bluefield Area Transit Conduct Policy and the Rules for Riding
to his affidavit. See ECF No. 10-1 and 10-2.

Defendants moved for dismissal of plaintiff's complaint
arguing that: (1) plaintiff had failed to state a viable claim
for relief under 42 U.S.C. § 1983; (2) the complaint fails to
adequately alleged a Monell claim under 42 U.S.C. § 1983; (3)
plaintiff fails to allege a viable claim under 42 U.S.C. §
2000a; and (4) plaintiff has failed to allege sufficient facts
to support a Second Amendment claim. See ECF No. 9.

Magistrate Judge Aboulhosn issued a Roseboro notice
informing Ross that he had the right to file a response to
defendants' motion and to "submit Affidavit(s) or statements
subject to the penalties of perjury, exhibits, and/or other

5

legal or factual material supporting his positions and issues in the case as they are challenged by Defendants in the aforesaid Motion." ECF No. 11. The Roseboro notice further informed Ross that "actual statements in Affidavits or Declarations submitted by Defendants will be accepted as true unless the Plaintiff sets forth facts in response indicating the existence of a genuine or actual dispute of fact for trial." Id. Ross was "advised that a failure to respond to the Defendants' Motion may result in a recommendation of denial of the relief sought in the Complaint and dismissal of th[e] suit." Id.

In response to defendants' motion, Ross offered a number of documents, most of which did not address defendants' arguments. See ECF Nos. 12-14, 16. He also filed a videotape of the incident. See ECF No. 19. For the most part, Ross' filings did not grapple with defendants' arguments in support of dismissal.

Defendants' reply brief was accompanied by another affidavit from Reeves and an incident report prepared by BAT employee Jenni Pickens on the day of the incident. See ECF No. 20.

In his PF&R, Magistrate Judge Aboulhosn noted that Ross failed to respond to defendants' argument that neither BAT nor Reeves denied Ross a seat on the bus or uttered a racial slur towards him. See ECF No. 48. It also noted that Ross did not rebut defendants' evidence that his

suspension was due to fighting because he was determined to
have violated the Passenger Conduct Policy.  See id.  As
for the Second Amendment claim, the PF&R found that Ross
did not respond to defendants' arguments in support of
dismissal.  See id.  By failing to respond to defendants'
arguments as to certain claims, Magistrate Judge Aboulhosn
wrote that those claims were abandoned and subject to
dismissal.  See id.  He wrote:

> Indeed, the Plaintiff's own pleadings do not dispute
> the Defendants' own recounting of the events at issue
> here – private citizens (other passengers) are alleged
> to [have] prevent[ed] the Plaintiff from taking
> occupied seats at the front of the bus, and another
> passenger called the Plaintiff a racial slur.
> Accordingly, the undersigned would recommend the
> Plaintiff's claims be dismissed with prejudice on the
> basis he fails to address or respond to the
> Defendant[s'] substantive arguments.
>
> Alternatively, this Court can dismiss the
> Plaintiff's Complaint because nowhere in the Complaint
> or in any of his supporting documentation or
> responsive pleadings does he indicate that BAT or
> Reeves actually violated his rights under Sections
> 2000a, 1983 or any other statute or federal law.  The
> plaintiff repeatedly alleges private actors, not named
> in this lawsuit, supposedly violated his rights.
> Indeed, having reviewed the recording contained on the
> Plaintiff's DVD exhibit, the undersigned finds that
> nothing in that video supports the Plaintiff's
> allegations that his rights were violated in any way
> by these Defendants – if anything, the video supports
> the Defendants' arguments that the Plaintiff himself
> was the aggressor on that day and caused his thirty-
> day suspension to ride the BAT.

Id. at 8-9.

In his objections, Ross states that

The bus station did not provide the reasonable
accommodations that [are] needed for certain
disabilities.  I waited for the bus [to] arrive and
when it did so I went to the front seats that [are]
supposed to be available.  I unknowingly sat on
another individual that was in the provided front
seat.  The man then proceeds to push me off and states
"you can't sit here."  Being blind I was startled.  I
quickly tried to find a seat and happen to find yet
another that was occupied.  The man that was seated
stated, "Sit down black nigger" in which I replied
"who are you talking to."  I then finally felt an
empty seat in front of the fellow passenger.  After a
few minutes of riding[,] I then felt a hit on the side
of my face.  Knowing that due to my disability I
needed to protect myself before they got the upper
hand of me.  I shouldn't have to worry when traveling
safely on the bus. . . .  I have been informed that a
few statements have been made that I also tried to sit
on the women in the opposite seat of the fellow I
accidentally sat on.  I wanted to inform the courts
that the video is proof that I was never close to the
said woman, "Mary Taylor."  The woman then provided a
statement for the courts that the reason she did move
[and] these allegations was made was because she did
not want to sit by a person of my color.  I have 2
witness statements that prove that what happened on
the bus was uncalled for and should not have happened.
The bus station was wrong for not meeting the
necessary ADA law for public transportation.  This law
states that transportation entities are required to
make reasonable modifications/accommodations to
policies, practices, and procedures to avoid
discrimination [and]m ensure that their programs are
accessible to individuals with disabilities.  John
Reeve general manager states that the public is
required to move for said disabled.  These rules
w[ere] not [e]nforced and this could have been
avoided.

ECF No. 52.

Analysis

The PF&R purports to grant a motion to dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(6).  However, defendants
offered matters outside the pleadings and the magistrate judge
considered them.  Therefore, the magistrate judge converted the
motion to dismiss into one for summary judgment.  See, e.g.,
Lewis v. Best Buy Stores, L.P., Civil Action Nos. 2:15-00394,
2015 WL 2452997, at *3 (S.D.W. Va. May 22, 2015) (acknowledging
that taking an affidavit into account "would require the court
to transform the defendant's motion to dismiss into a motion for
summary judgment") (Copenhaver, J.).  The federal rules
contemplate as much as Federal Rule of Civil Procedure 12(d)
provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c),
matters outside the pleadings are presented to and not excluded
by the court, the motion must be treated as one for summary
judgment under Rule 56."  Rule 12(d) goes on to state that
"[a]ll parties must be given a reasonable opportunity to present
all material that is pertinent to the motion."  The Roseboro
notice entered in this case informed Ross of his opportunity to
provide evidence pertinent to defendants' motion.  And the
record reflects that he took advantage of that opportunity.

Pursuant to Rule 56(a) a court should "grant summary
judgment if the movant shows that there is no genuine dispute as

9

to any material fact and the movant is entitled to judgment as a matter of law." The material facts of this case are not in dispute. With respect to his claims of racial discrimination, Ross has failed to put forth any evidence of discrimination on the part of these defendants. There is no evidence that the BAT or Reeves used racial slurs or discriminated against him based upon race. Defendants are entitled to judgment in their favor on any claims for race discrimination.

Many of the documents Ross has filed confirm that his chief complaint is that, on one occasion, the bus driver did not make the people in the front seats of the bus move to accommodate him. He never addresses the status of the two individuals in the front seats, including whether they are disabled or elderly and if he had a superior claim to those seats.

> Title II of the ADA prohibits public entities, including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government," id. § 12131(1), from discriminating "by reason of" disability against a "qualified individual with a disability." Id. § 12132. For purposes of Title II, a "qualified individual with a disability" is defined as an individual with a disability "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Title II of the ADA applies to "'anything a public entity does.'" Seremeth v. Bd. of County

Comm'rs of Frederick County, 673 F.3d 333, 338 (4th
Cir. 2012) (citing cases) (citations omitted); see
also Paulone v. City of Frederick, 787 F. Supp. 2d
360, 380-81 (D. Md. 2011) (collecting authority).

Title II also includes provisions targeted at
discrimination in public transportation.  See 42
U.S.C. §§ 12141-50, 12161-65.

Ash v. Maryland Transit Admin., Civil Action No. ELH-18-1216,
2019 WL 1129439, at *3 (D. Md. Mar. 12, 2019).  The Fourth
Circuit has recognized "three distinct grounds for relief:  (1)
intentional discrimination or disparate treatment; (2) disparate
impact; and (3) failure to make reasonable accommodations."
Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494, 503 n.5 (4th
Cir. 2016).  Ross complains of defendants' alleged failure to
make a reasonable accommodation.

Ross, however, has not pointed to any provision in the ADA
that would mandate the specific accommodation he seeks.
Furthermore, there is no indication that BAT or any employee of
BAT denied him an accommodation.  Ross does not allege that the
bus driver told him he could not sit in priority seating.  Nor
does he allege that he told the bus driver he needed to sit in
the front seats or that he asked her to have the other
passengers move.  See Greer v. Richardson Indep. Sch. Dist., No.
10-11254, 472 F. App'x 287, 296 (5th Cir. Mar. 14, 2012)
(holding that plaintiff failed to present a prima facie case of
disability discrimination where on one occasion "she is

11

dissatisfied with her seating location and makes no effort to
ask the venue's staff as to where alternative accessible seating
is located or if she and her family can be accommodated").

Furthermore, Ross himself acknowledged the BAT accommodated
his disability numerous times over a period of years.  He
complains of a failure to accommodate on only one occasion.
According to an affidavit filed by Ross and dated September 21,
2023, "[t]he bus driver[s] on the Bluefield Area Transit have
always helped to ensure my safety on and off the bus.  I have
been riding the transit for a total of 3 y[ea]rs and have never
experienced any discrimination and have always had reasonable
accommodation from the bus driver until March 23, 2023.".  ECF
No. 62.  Another affidavit from Ross, dated October 19, 2023,
also described the accommodations BAT and its employees
provided:  "November thru Jan 2022 to 2023, me and my totally
blind wife traveled on the Bluefield Area Transit with a 3 yr
old sited son.  The bus drivers showed a reasonable
accommodation[] for our disability.  They did not discriminate
against us.  They helped us find seats to make sure we are safe.
The bus drivers made it their priority to make sure we were
safe."  ECF No. 70.

"[T]he regulations under the ADA do not require perfect bus
service for disabled bus riders, and [ ] occasional problems,

without more, do not constitute a violation of the ADA."
Cisneros v. Metro Auth. and Agents, Civil No. 3:13-0061, 2014 WL
993315, at *4 (M.D. Tenn. Mar. 13, 2014); see also Chapman v.
Pier 1 Imp. (U.S.) Inc., 779 F.3d 1001, 1008 (9th Cir. 2015)
("[R]egulations implementing the ADA do not contemplate perfect
service.") (internal citation and quotation omitted).  The
inadequate service that Ross is alleged to have received on one
occasion does not violate his rights under the ADA.  See
Gustafson v. Bi-State Dev. Agency of the Missouri-Illinois
Metro. Dist., 29 F.4th 406, 412 (8th Cir. 2022) (upholding grant
of summary judgment in favor of transit agency where disabled
plaintiff "allege[d] three incidents of discrimination by Bi-
State during an eight-month period" and "there is nothing in the
record to indicate that [plaintiff]'s experiences were anything
more than frustrating, but isolated, instances which do not,
without more, establish a violation of the ADA") (internal
citation and quotations omitted); Moore v. Niagara Frontier
Trans. Auth., Inc., 21-CV-1160-LJV, 2023 WL 8718762, at *6
(W.D.N.Y. Dec. 18, 2023) ("[F]our 'isolated' instances of subpar
service over a period of more than four years do not amount to
'regular' interference with Moore's use of PAL service or a
'pattern or practice that significantly limits' Moore's access
to PAL service.").

For the foregoing reasons, plaintiff's objections to the PF&R are **OVERRULED** and defendants are entitled to entry of judgment in their favor on plaintiff's disability discrimination claim.

For the reasons set forth above, the court overrules plaintiff's objections to the Magistrate's Findings and Recommendations.  Accordingly, the court adopts his Findings and Recommendation except as modified herein and **GRANTS** defendants' motion for summary judgment, **DISMISSES** this case with prejudice, and directs the Clerk to remove this case from the court's active docket.  All other pending motions are **DENIED**.

The Clerk is directed to forward a certified copy of this Order to counsel of record and plaintiff.

**IT IS SO ORDERED** this 29th day of March, 2024.

ENTER:

David A. Faber
Senior United States District Judge

14